UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RADIOLOGY AND IMAGING SPECIALISTS OF LAKELAND, P.A., <br><br> Plaintiff, <br><br> v. <br><br> FUJIFILM MEDICAL SYSTEMS, U.S.A., INC., and TIAA COMMERCIAL FINANCE, INC., f/k/a EVERBANK COMMERCIAL FINANCE, INC., <br><br> Defendants. | CIVIL ACTION NO.  20 CIV. 4117 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Radiology and Imaging Specialists of Lakeland, P.A., by and through counsel, for its Complaint against FUJIFILM Medical Systems, U.S.A., Inc., and TIAA Commercial Finance, Inc., f/k/a EverBank Commercial Finance Inc., alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Radiology and Imaging Specialists of Lakeland, P.A. ("RIS") is a Florida professional association. RIS's shareholders are all citizens of the State of Florida.

2. FUJIFILM Medical Systems, U.S.A., Inc. ("FUJIFILM"), is a New York corporation with a principal place of business in Lexington, Massachusetts.

3. TIAA Commercial Finance, Inc., f/k/a EverBank Commercial Finance, Inc. ("TIAA") is a Delaware Corporation with a principal place of business of Parsippany, New Jersey.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) a professional association whose shareholders are all

9595227.1

citizens of Florida, (2) a New York corporation with a principal place of business in Massachusetts and (3) a Delaware corporation with a principal place of business in New Jersey.

5. The Court has personal jurisdiction over FUJIFILM based on RIS's and FUJIFILM's contractually agreed-upon forum selection clause. *See* Section 20(a) of the End User Purchase License and Services Agreement (the "EUPLSA"), filed herewith as **Exhibit A**.

6. The Court has personal jurisdiction over TIAA based on New York Civil Practice Law & Rules, NY CPLR § 302(1) because TIAA transacts business with and contracts to supply financing services to FUJIFILM, a New York corporation, related to the FUJIFILM software at issue in this lawsuit.

7. Venue is proper in this Court based on RIS's and FUJIFILM's contractually agreed-upon forum selection clause. *See* EUPLSA § 20(a).

## FACTUAL BACKGROUND

8. RIS is a physician-owned medical group providing radiological and imaging services at multiple offices in Central Florida. RIS has been providing high-quality medical imaging services utilizing leading-edge technology for over 50 years.

9. FUJIFILM develops and markets medical imaging software and technologies.

10. FUJIFILM's website markets its Synapse Imaging, including the Synapse RIS Software (the "Software"), as a program "designed for true imaging interoperability. It provides secure, easy-to-manage storage and access to the complete patient imaging record and links all healthcare IT systems across diagnostic departments—allowing individual physicians immediate access whenever and wherever they need it."

11. In or around 2016, RIS decided to upgrade its Radiology Information System and invest in FUJIFILM's Software in order to migrate its data to a radiology workflow management

software program that would be largely functional upon initial installation, requiring few modifications.

12. In late 2016, RIS contracted with FUJIFILM to license the Software and to purchase hardware and services to implement the Software under the terms of the EUPLSA.

13. On information and belief, FUJIFILM knew that RIS required medical imaging software that would be functional and effective in RIS's multi-office, multi-provider radiology practice. Accordingly, on information and belief, FUJIFILM represented to RIS that FUJIFILM's Software would be functional and effective in RIS's multi-office, multi-provider radiology practice.

14. RIS accepted FUJIFILM's Quotation and Service Agreement ("Quotation"), which incorporated by reference the EUPLSA, on or about September 23, 2016. *See* Quotation at 7, 9, filed herewith as **Exhibit B**. The parties inadvertently failed to sign the EUPLSA until March 5, 2018.

15. RIS entered into an equipment lease agreement (the "Lease") for the Software with EverBank Commercial Finance, Inc. ("EverBank"), dated on or about October 12, 2016, filed herewith as **Exhibit C**. As of 2018, TIAA is the successor-by-merger to EverBank.

16. Under the terms of the Lease, beginning on or about June 22, 2017, RIS has remitted quarterly maintenance fees and lease payments to EverBank. RIS has no contractual obligation to remit payment to FUJIFILM for the Software or otherwise.

17. In total, RIS has paid EverBank or TIAA $300,456.00 of the $413,451.00 owed under the terms of the Lease for lease payments. Because the Software was never fully implemented, RIS received a refund of maintenance fees paid to date.

3

18. Under the terms of the EUPLSA, FUJIFILM warranted that the Software or components thereof "will perform substantially in accordance with the Documentation for a period of 90 days from the date of installation, and the Hardware will perform substantially in accordance with the Documentation for a period of one year from the data of installation." *See* EUPLSA § 10(a).

19. "Documentation" is defined as "the operating instructions, user manuals, installation checklist, help files and other technical information for the System, in written or electronic form, delivered by FMSU to Customer with the System." *See* EUPLSA § 1(c).

20. FUJIFILM also warranted its maintenance services. *See* EUPLSA § 10(c). Specifically, FUJIFILM warranted that for any breach of the service warranty, FUJIFILM would conduct re-performance of the non-conforming service. *Id.*

21. RIS selected FUJIFILM's Software because FUJIFILM represented that RIS would be able to implement FUJIFILM's system with few workflow modifications and that the Software would perform effectively in RIS's multi-organization, multi-provider practice.

22. As RIS prepared to transition to FUJIFILM's Software, RIS began to encounter problems with the Software almost immediately. RIS first had to undertake a data migration effort to move its existing imaging data from its current system to the FUJIFILM Software. RIS quickly realized that a data compatibility issue existed with the transition to the FUJIFILM Software.

23. To assist with the data migration process, FUJIFILM required RIS to work with a FUJIFILM sub-contractor, Data First, to manage the data migration effort. RIS expected that Data First would handle the data migration process in its entirety, *i.e.*, extract RIS's data from RIS's current system, as well as intake of RIS's extracted data into FUJIFILM's system. However, RIS

quickly learned that Data First would only be addressing data intake and that RIS would be responsible for extracting the data.

24. By the beginning of 2017, RIS encountered additional issues with the Software. RIS has traditionally used a RightFAX server for its FAX needs. Although FUJIFILM had represented to RIS that its Software was able to integrate with RightFAX, RIS later learned that FUJIFILM provided no RightFAX support. As a result, RIS had to bear the expense of developing RightFAX integration for the Software.

25. As RIS migrated test data into the FUJIFILM Software, RIS learned, for the first time, that FUJIFILM lacked multi-organization capability, meaning that FUJIFILM's system lacked the ability to track data for each of RIS's separate entities. This function is critical for RIS, which has numerous separate organizational structures and needs to be able to isolate its patient records at these various locations.

26. RIS paused its implementation of the FUJIFILM Software in order to acquire a Master Patient Indexing ("MPI") system to address the lack of multi-organization capability in the Software. To address this issue, RIS selected and purchased the NextGate eMPI platform at a cost to RIS of $252,000.00. NextGate eMPI is an indexing system which ascribes a single identifying numerical reference to a patient who may have medical records at multiple RIS or RIS client facilities. Implementation costs associated with the NextGate eMPI were an additional $123,200.00, and RIS also pays $50,400.00 for support associated with NextGate eMPI.

27. In addition to raising concerns as to whether the Software was fit for its intended use, RIS's leadership and its clinical and IT project teams were repeatedly raising concerns with FUJIFILM leadership about FUJIFILM's implementation teams and project manager. Some of RIS's concerns included that FUJIFILM's project documentation was lacking, that FUJIFILM

either cancelled or scheduled project meetings last minute, that FUJIFILM failed to adhere to implementation timelines, and that FUJIFILM failed to respond to numerous requests for meeting minutes.

28. At this point, FUJIFILM assigned Chuck Socia, an Implementation Manager of Information Systems, to assist and directly oversee FUJIFILM's project manager. RIS was hopeful and perceived that Mr. Socia was a subject matter expert who would get the project back on track.

29. Unfortunately, from late 2017 into 2018, the Software continued to fail to meet RIS's expectations.

30. Despite the fact that RIS had previously determined that the NextGate eMPI platform was a critical piece of the implementation process in order to properly index RIS's patients across RIS's multiple facilities, Mr. Socia advised that the Software implementation should proceed without leveraging the NextGate eMPI and that the disparate patient data could be appropriately indexed after the Software went live. Despite their misgivings and while voicing concern that going live with patient data known to be improperly indexed or poorly matched was the wrong approach, the RIS team reluctantly agreed to move forward, agreeing that RIS had to defer to FUJIFILM as subject matter experts on FUJIFILM's own Software.

31. The Software implementation process continued to stall into 2018. During 2018, there were two failed go-live attempts. The RIS team cancelled a third go-live attempt after determining that issues with the Software would result in a potentially catastrophic disruption to RIS's business. Those disruptions could have included disruption of scheduling processes, causing patient records viewed in FUJIFILM's system not to correlate to RIS's picture archiving system viewed in the clinical setting, and causing mismatched patient reports.

32. After a year of lost effort, the FUJIFILM team finally agreed with the RIS team that they should, in fact, leverage the NextGate eMPI to appropriately index the patient data in advance of the go-live.

33. In 2018 and into 2019, while preparing for and testing NextGate eMPI integration, RIS discovered several significant issues with the Software referred to by RIS and FUJIFILM as "showstoppers." Both RIS and FUJIFILM agreed that any unresolved "showstopper" would and must prevent the Software implementation from proceeding until resolved. "Showstoppers" discovered by RIS included the following issues:

    a. If more than one RIS provider was inputting data into a single patient record at the same time, only the last update to that record would be retained, while any changes made by other providers would be lost, creating a potential patient safety issue as a result of missing information;

    b. The Software lacked the capability to ensure that provider identifications are unique in the "FUJIFILM dictionary", causing a high risk of duplicate provider identifications since the FUJIFILM dictionary contains thousands of providers;

    c. The Software required numerous manual processes, including, for example, FAX management;

    d. The Software lacked the ability to track biopsy management inconsistencies; and

    e. The Software had only generic protocol templates, which required radiologists to update the specific protocols for each patient.

34. In June 2019, a FUJIFILM executive came on site to RIS's offices for a critical meeting with several RIS stakeholders to discuss a path forward for the Software implementation,

9595227.1

in light of the various "showstoppers" RIS discovered. This meeting was scheduled at FUJIFILM's insistence. At this meeting, it was finally agreed by both RIS and FUJIFILM that there were no solutions for the "showstoppers" referenced above.

35. RIS has never had a "go live" with FUJIFILM's Software as the Software has never been functional. When RIS initially contracted with FUJIFILM in or about September 2016, FUJIFILM told RIS that the Software would be able to "go live" within six months.

36. RIS has suffered and will continue to suffer damages in an amount in excess of $75,000.00, including but not limited to consequential damages, incidental damages, and lost profits, as a direct result of FUJIFILM's breaches and violations of the law.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

### (Against FUJIFILM)

37. RIS incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38. The EUPLSA was signed and accepted by RIS and FUJIFILM in or about September 2016 by virtue of the RIS accepting FUJIFILM's Quotation and Service Agreement.

39. FUJIFILM's license of its Software is a sale of good under the New York Uniform Commercial Code, NY UCC § 2-102.

40. FUJIFILM breached the EUPLSA by: (1) failing to deliver the Software within a reasonable time, (2) failing to deliver goods that conformed to the contract specifications and warranties; and (3) failing to provide reasonable maintenance and support.

41. FUJIFILM breached the terms of the EUPLSA by failing to provide RIS with access to and use of the "Software" as that term is defined in the EUPLSA. The Software has never had a "go live" or been functional by RIS despite the fact that FUJIFILM promised that the installation process would take approximately six months.

42. The Software provided by FUJIFILM failed to perform in compliance with the representations in the EUPLSA. At the June 2019 meeting between RIS and FUJIFILM, FUJIFILM agreed that it was unable to provide a resolution for the "showstoppers" identified in paragraph 33 above. FUJIFILM, therefore, failed to provide goods that conformed to the contract. NY UCC § 2-601.

43. FUJIFILM also breached Section 10(c) and Schedule A of the EUPLSA under which FUJIFILM agreed to provide support services.

44. FUJIFILM failed to provide software support for problems identified by RIS. FUJIFILM also failed to provide adequate project documentations, cancelled project meetings, and failed to adhere to project timelines.

45. RIS was also required to incur considerable and unreasonable expenses in an effort to make the Software functional. RIS had to bear the costs of developing RightFAX integration for the Software. RIS also had to purchase the NextGate eMPI platform so that the Software would have multi-organization functionality.

46. RIS is entitled to recover all of its damages caused by FUJIFILM's breaches of the EUPLSA, including but not limited to consequential damages, incidental damages, and lost profits, irrespective of any language in the EUPLSA purporting to limit FUJIFILM's liability for damages. The damages disclaimers in the EUPLSA (Sections 11(a) and 11(b)) are unconscionable because they are so one-sided that they oppress and unfairly surprise RIS. *See* NY UCC §§ 2-302, 2-719.

47. The damage disclaimer is oppressive and unfair because FUJIFILM knew that it had not provided RIS with complete, accurate and truthful information during the sales process, which RIS needed to make an informed decision about purchasing FUJIFILM's Software and sign the EUPLSA. Specifically, among other things, FUJIFILM was untruthful about the fact that the

Software lacked basic functionality for a multi-organizational, multi-provider radiology practice like RIS.

48. RIS relied on FUJIFILM's expertise, oral representations, and written representations in the EUPLSA. FUJIFILM intentionally and willfully induced RIS to buy Software not fit for its intended use and by doing so, demonstrated disregard for RIS and its business and cannot now hide behind a damages disclaimer in the EUPLSA.

49. RIS's lost revenue, lost profits, incidental costs, and consequential damages as a result of the Software's failures were so foreseeable to FUJIFILM that they constitute direct damages and are not barred by the damages disclaimer in the EUPLSA.

50. As a direct result of FUJIFILM's breach of the EUPLSA, RIS has been damaged in an amount in excess of $75,000.00.

## COUNT II – BREACH OF EXPRESS WARRANTY

### (Against FUJIFILM)

51. RIS incorporates by reference paragraphs 1 through 50 as if fully set forth herein.

52. The EUPLSA was signed and accepted by RIS and FUJIFILM in or about September 2016 by virtue of RIS accepting FUJIFILM's Quotation and Service Agreement.

53. Pursuant to Section 10(a) of the EUPLSA, FUJIFILM contractually warranted that during the "Software or components thereof . . . will perform substantially in accordance with the Documentation for a period of 90 days from the data of installation[.]"

54. FUJIFILM provided further warranties in Section 10(c) and Schedule A to the EUPLSA, which described the maintenance services promised to RIS.

55. FUJIFILM breached these warranties. The Software has never been functional, has never had a "go live," and has never been useable by RIS in any way.

56. The purported 90 day limitation on the contractual warranty frustrates the purpose of the EUPLSA, is unconscionable, and is inapplicable because the Software was never actually available for RIS's use and evaluation.

57. RIS was in constant communication with FUJIFILM about the limitations and problems with the Software. FUJIFILM was never able to address or remedy the deficiencies, including the "showstoppers" referenced in paragraph 33 above. FUJIFILM has also failed to refund RIS the money paid for the Software and therefore breached the warranty. Even if FUJIFILM had returned the money RIS paid for the Software, a refund would not have made RIS whole.

58. As a direct and proximate result of FUJIFILM's breach of express warranty, RIS has incurred damages in excess of $75,000.00, with the exact amount to be determined with specificity at trial.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(Against FUJIFILM)**

59. RIS incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60. Pursuant to NY UCC § 2-314, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

61. Goods to be merchantable must be at least such as

   a. pass without objection in the trade under the contract description; and

   b. in the case of fungible goods, are of fair average quality within the description; and

   c. are fit for the ordinary purposes for which such goods are used; and

   d. run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

9595227.1

  e. are adequately contained, packaged, and labeled as the agreement may require; and

  f. conform to the promises or affirmations of fact made on the container or label if any.

NY UCC § 2-314.

62. FUJIFILM breached the warranty of implied merchantability, including by providing RIS with Software that was not fit for the ordinary purposes of which the Software is used and because the Software would not pass without objection in the trade under the contract descriptions.

63. The "showstoppers" referenced in paragraph 33 above render the Software unfit for use in any medical practice, including RIS's multi-organization, multi-provider radiology practice.

64. FUJIFILM's disclaimer of the warranty of implied merchantability in the EUPLSA is unconscionable and also must be set aside because the evidence unequivocally demonstrates that the substantially defective nature of the Software clearly impaired its value to RIS and thus revocation of acceptance is appropriate. NY UCC § 2-302.

65. As a direct and proximate result of FUJIFILM's breach of implied warranty, RIS has incurred damages in excess of $75,000.00, with the exact amount to be determined with specificity at trial.

## COUNT IV – FRAUDULENT INDUCEMENT
### (Against FUJIFILM)

66. RIS incorporates by reference paragraphs 1 through 65 as if fully set forth herein.

67. On information and belief, FUJIFILM representatives made knowingly false and misleading statements and/or omitted critical information during the sales process leading up to the EUPLSA.

68. On information and belief, FUJIFILM representatives falsely represented the Software's capabilities and/or misled RIS regarding the Software's ability to effectively service RIS's multi-provider, multi-organization radiology practice.

69. During the sales process, FUJIFILM represented that the Software would integrate with RIS's FAX support and be functional in RIS's multi-organization, multi-provider setting.

70. FUJIFILM knew that RIS would rely on this information when selecting FUJIFILM Software and, on information and belief, made these statements and/or omitted critical information in an effort to induce RIS to sign the EUPLSA and enter into the Lease with EverBank.

71. RIS reasonably relied on FUJIFILM's false representations, promises, and omissions in signing the EUPLSA and agreeing to the Lease for FUJIFILM's Software.

72. RIS was eventually forced to abandon the FUJIFILM Software altogether and never received the value of the product it expected to receive – and was fraudulently promised – under the EUPLSA.

73. As a result of FUJIFILM's fraudulent inducement, the EUPLSA is, therefore, void.

74. RIS is entitled to recover damages from FUJIFILM, including but not limited to the return of monies paid to EverBank and TIAA under the terms of the Lease, consequential damages, incidental damages, lost revenue and profits, and other losses resulting from FUJIFILM's misrepresentations, in an amount to be determined at trial in excess of $75,000.00.

**COUNT V – VIOLATION OF NEW YORK CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES, GEN. BUS. § 349, AND NEW YORK FALSE ADVERTISING ACT, GEN. BUS. § 350**

**(Against FUJIFILM)**

75. RIS incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. FUJIFILM's actions constitute unlawful deceptive trade practices under New York General Business Law § 349 and violate the New York False Advertising Act, New York General Business Law § 350 (collectively, "New York Consumer Protection Laws" OR "NYCPL").

77. FUJIFILM's deceptive acts or practices were consumer oriented in that they had a broad impact on the consumer at large, that is, the patients who use and rely on RIS's imaging services.

78. FUJIFILM knowingly misrepresented and/or intentionally omitted and concealed material information regarding the Software by misstating and/or failing to disclose to RIS that the Software would not integrate with RIS's FAX support, would not be functional in RIS's multi-organization, multi-provider setting, and contained the various "showstopper" problems referenced in paragraph 33.

79. RIS relied on FUJIFILM's fraudulent statements and promises and agreed to license the Software only after FUJIFILM's deception.

80. FUJIFILM's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts, with the intent that others rely on such concealment, suppression, or omission, in connection with the license and use of Software, in violation of NYCPL § 349.

81. FUJIFILM's actions also constitute materially misleading advertising in violation of NYCPL § 350.

82. RIS is entitled to damages and attorneys' fees as a result of FUJIFILM's deception, in an amount to be determined at trial in excess of $75,000.00.

## COUNT VI – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLORIDA STATUTES §§ 501.201

### (Against FUJIFILM)

83. RIS incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

84. This action is brought to secure redress for unlawful, deceptive and unfair trade practices perpetrated by FUJIFILM on behalf of RIS.

85. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statutes § 501.201, *et seq.*, was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition and unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

86. RIS alternatively pleads Count VI under the FDUTPA, should the Court find that Florida law apply to this claim.

87. RIS is a "consumer" and the Software license with FUJIFILM constitutes "trade or commerce" as defined by Florida Statutes § 501.203(7) and (8).

88. FUJIFILM's actions, as alleged herein, constitute affirmative acts or representations, including unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation, and are therefore unlawful under FDUTPA.

89. RIS reasonably and justifiably relied on FUJIFILM's deceptive, unfair, and fraudulent misrepresentations, as alleged.

90. As a direct and proximate result of FUJIFILM's unlawful acts and omissions, RIS has suffered an ascertainable loss of money or property, in that they would not have licensed the Software but for FUJIFILM's material omissions and affirmative acts or representations in connection with the marketing, advertising, and license of the Software.

91. RIS is entitled to compensatory damages, equitable and declaratory relief, costs, and reasonable attorney's fees, in an amount to be determined at trial in excess of $75,000.00.

## COUNT VII – UNJUST ENRICHMENT

### (Against FUJIFILM)

92. RIS incorporates by reference paragraphs 1 through 91 as if fully set forth herein.

93. RIS conferred a tangible economic benefit upon FUJIFILM by paying EverBank and TIAA under the terms of the Lease for the Software. EverBank and TIAA, in turn, remitted payment to FUJIFILM.

94. FUJIFILM did not deliver functional Software to RIS. For the reasons alleged in this Complaint, Software has never had a "go live," and RIS has never been able to utilize the Software in its practice.

95. Under the circumstances, it would be inequitable and unconscionable to permit FUJIFILM to retain the ill-gotten benefits it received from EverBank and TIAA by virtue of RIS's payments under the Lease, in light of the fact that the Software is not functional. Accordingly, FUJIFILM has been unjustly enriched in an amount no less than $300,456.00.

96. It would be unjust and inequitable for FUJIFILM to retain the benefit without restitution or disgorgement of money RIS paid to EverBank and TIAA under the Lease and which EverBank and TIAA, in turn, paid to FUJIFILM. RIS is therefore entitled to reimbursement of these monies paid.

## COUNT VIII – DECLARATORY JUDGMENT OF FRUSTRATION OF PURPOSE OF THE LEASE

### (Against TIAA)

97. RIS incorporates by reference paragraphs 1 through 96 as if fully set forth herein.

98. As a result of FUJIFILM's fraudulent conduct, as set forth in Count IV, the EUPLSA is void.

99. The continuing validity of the EUPLSA is a basic assumption upon which the Lease between RIS and TIAA was based.

100. The event causing the frustration of purpose was not foreseeable due to FUJIFILM's fraudulent representations and omissions, as alleged above.

101. The purpose of the Lease, that is, RIS's licensing of the Software under the EUPLSA, has been frustrated and any remaining obligations of RIS under the Lease should be discharged.

102. The frustration of purpose was substantial and severe because RIS would not have entered into the Lease had it known that the Software was not functional for its practices or that it contained the various "showstopper" problems, as alleged in paragraph 33.

103. RIS seeks a declaratory judgment that its payment obligations under the Lease are, therefore, discharged under the doctrine of frustration of purpose.

## PRAYER FOR RELIEF

WHEREFORE, RIS prays as follows:

1. For a judgment awarding monetary damages for FUJIFILM's breach of the EUPLSA in an amount to be determined at trial;

2. For a judgment awarding monetary damages for FUJIFILM's breach of express warranty in an amount to be determined at trial;

3. For a judgment awarding monetary damages for FUJIFILM's breach of implied warranty of merchantability in an amount to be determined at trial;

4. For a judgment awarding monetary damages for FUJIFILM's fraudulent inducement in an amount to be determined at trial and finding that the EUPLSA is void;

5.    For a judgment awarding monetary damages and attorneys' fees for FUJIFILM's violations of the NYCPL §§ 349, 350, in an amount to be determined at trial, or, alternatively, for a judgment awarding monetary damages and attorneys' fees for FUJIFILM's violations of Florida Statutes § 501.201, *et seq.*, in an amount to be determined at trial;

6.    For a judgment awarding monetary damages for FUJIFILM's unjust enrichment, in an amount to be determined at trial;

7.    For a declaratory judgment finding RIS's payment obligations discharged under the Lease under the doctrine of frustration of purpose;

8.    For a judgment awarding pre- and post-judgment interest, costs, and to the extent available under applicable law, attorneys' fees;

9.    Award of punitive damages because FUJIFILM's actions show a reckless disregard for RIS's rights; and

10.   For such further and additional relief as the Court deems equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on any issue so triable.

**CARTER LEDYARD & MILBURN LLP**

By: */s/* Judith Lockhart
    Judith Lockhart
    Madelyn K. White
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Email: lockhart@clm.com
      white@clm.com

-and-

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

Catherine S. Dorvil (pro hac vice motion to be filed)
Kelly Blair Etchells (pro hac vice motion to be filed)
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, Tennessee 37450
Telephone:   (423) 757-0240
Facsimile:    (423) 508-1240
Email:  cdorvil@chamblisslaw.com
      ketchells@chamblisslaw.com

*Attorneys for Plaintiff Radiology and Imaging Specialists, P.A.*

9595227.1