```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
RADIOLOGY AND IMAGING SPECIALISTS      :
OF LAKELAND, P.A.,                     :
                                       :      ORDER GRANTING MOTIONS
                  Plaintiff,           :      TO DISMISS
        v.                             :
                                       :      20 Civ. 4117 (AKH)
FUJIFILM MEDICAL SYSTEMS, U.S.A., Inc., :
et al.,                                :
                                       :
                  Defendants.          :
                                       :
                                       :
-------------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff, Radio and Imaging Specialists of Lakeland, P.A., sues Defendant FUJIFILM Medical Systems U.S.A., Inc. ("FUJI"), the seller of medical equipment, and TIAA Commercial Financial, Inc. ("TIAA"), the third-party financing company. FUJI moves to dismiss the consequential damages, incidental damages, and lost profits claims of the first two counts and all other counts against it. TIAA moves to dismiss Plaintiff's claim against it. Both motions are granted.

## RELEVANT FACTS

Plaintiff is a physician-owned medical group providing radiological and imaging services at multiple offices in Central Florida. FUJI develops and markets imaging software and technologies, including the Synapse RIS Software system licensed to the plaintiff in this case (the "System"). On or about September 23, 2016, Plaintiff contracted with FUJI in order to upgrade its radiology information system and migrate its data to that System pursuant to FUJI's Quotation and Service Agreement ("Quotation"). On March 5, 2018, Plaintiff and FUJI executed an End User Purchase License and Services Agreement ("EULA") after discovering

1

that they had inadvertently failed to sign the EULA at the same time as the Quotation. Plaintiff financed its obligations to FUJI by an equipment lease agreement (the "Lease") with EverBank Commercial Finance, Inc. ("EverBank"), dated October 12, 2016. TIAA is the successor-by-merger to EverBank.

Plaintiff alleges that the System never was installed, because it "lacked basic functionality for a multi-organizational, multi-provider radiology practice like [Plaintiff.]" *Compl.*, at ¶ 47. Plaintiff filed its lawsuit against FUJI and TIAA on May 29, 2020.

## DISCUSSION

### I. Limitation of Liability and Disclaimer Provisions.

The EULA contains several provisions that (i) set forth limited express warranties relating to the Software System, (ii) disclaim any other express or implied warranties relating to the Software System, (iii) limit the types of damages recoverable from FUJI on any claims relating to the EULA, and (iv) cap the maximum damages recoverable as to any such claim. *See Compl.*, Ex. A.

Specifically, those provisions include the following:

10. LIMITED WARRANTIES AND DISCLAIMERS:
\* \* \*
(e) PARAGRAPHS A, C and D ABOVE COMPRISE THE SOLE AND EXCLUSIVE REMEDIES TO WHICH CUSTOMER IS ENTITLED FOR BREACH OF WARRANTY. EXCEPT FOR WARRANTIES, IF ANY, CONTAINED IN THE DOCUMENTATION RELATING TO THE PERFORMANCE OF THE SYSTEM, **THE SYSTEM AND SERVICES ARE PROVIDED WITHOUT ANY OTHER WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED**, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUIET ENJOYMENT, SECURITY, SYSTEM INTEGRATION OR ACCURACY, OR INFORMATIONAL CONTENT AND NONINFRINGEMENT. FMSU's WARRANTY DOES NOT APPLY TO THIRD PARTY PRODUCTS OR PASS-THRU PRODUCTS, IF ANY, INCLUDED IN ANY CONFIGURATION QUOTE, INVOICE OR OTHER AUTHORIZED FMSU PURCHASE ORDER AND FMSU SHALL HAVE NO OBLIGATION

OR LIABILITY WHATSOEVER TO CUSTOMER WITH RESPECT TO SUCH THIRD PARTY PRODUCTS OR PASS-THRU PRODUCTS.

11. <u>LIMITATION OF LIABILITY: INSURANCE</u>:

(a) <u>WAIVER AND DISCIAIMER OF CONSEQUENTIAL DAMAGES</u>. **FMSU AND ITS LICENSORS SHALL NOT BE LIABLE TO CUSTOMER FOR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND** (INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE OR PROFITS, FAILURE TO REALIZE SAVINGS OR OTHER BENEFITS, LOSS OF OR DAMAGE TO DATA, RECORDS OR PROGRAMMING, AND CLAIMS AGAINST CUSTOMER BY THIRD PERSONS) ARISING FROM OR RELATING TO THIS AGREEMENT OR A BREACH THEREOF OR ANY ORDER PLACED HEREUNDER, WHETHER BASED IN CONTRACT, TORT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, BREACH OF STATUTORY DUTY OR OTHER THEORY, EVEN IF FMSU OR ITS LICENSORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) <u>MAXIMUM DAMAGES</u>. Except with respect to the indemnity provided in Section 12, the liability of FMSU and its licensors, if any, and Customers **sole and exclusive remedy** for damages for any claim of any kind whatsoever with respect to this Agreement **shall not be greater than the purchase price paid by Customer for the components of the System** with respect to which such claim is made or, in the event of a claim made with respect to any obligation, service or otherwise, of FMSU pursuant to this Agreement, shall not be greater than the amount paid by Customer for the applicable annual fee for such obligation giving rise to such claim.

*Id.* (emphasis added).

The parties agree that New York law governs. Plaintiff argues that the provisions of the contract quoted above are unenforceable under New York law because (i) FUJI acted willfully and/or in bad faith or (ii), alternatively, they are unconscionable. There is no merit to the arguments.

### A. Plaintiff Fails to Plead Facts Sufficient to Support a Plausible Inference That FUJI Acted Willfully or in Bad Faith.

"[N]umerous courts [in New York] have held or assumed that . . . limitations on remedies, such as caps on damages or restrictions on the types of damages available, can . . . be void where gross negligence or willful misconduct is shown." *Ace Sec. Corp. Home Equity Loan*

3

*Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 55–56 (S.D.N.Y. 2014). Likewise, "[a] defendant may be estopped from asserting a contractual limitation of consequential damages if the defendant has acted in bad faith." *Long Island Lighting Co. v. Transamerica Delaval*, 646 F. Supp. 1442, 1458 (S.D.N.Y. 1986); *see also McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1199-200 (2d Cir. 1995) ("Under New York common law every party to a contract has an affirmative obligation to use its 'best efforts' to meet the contract's terms," and "[a] breach of a fundamental obligation under a contract occurs where the contract fails in its essence").

However, New York courts set a high bar for showing "wrongful conduct sufficient as a matter of law to nullify a limitations of liability clause in contract – demanding nothing short of a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts." *See Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 453–55 (S.D.N.Y. 2003) (surveying cases).

Plaintiff fails to plead sufficient facts to meet the "high bar" of nullifying a limitation of liability clause under New York law. In support of its claim for willful misconduct and bad faith, Plaintiff provides the following bullet-points in its opposition, which, in turn, cites to allegations made in the complaint:

- Plaintiff selected the System because FUJI represented to Plaintiff that it would be able to implement the system with few workflow modifications and that the System would perform effectively in Plaintiff's multi-organization, multi-provider practice, *see Compl.*, at ¶ 21;

4

- Plaintiff relied on FUJI as the developer and expert with respect to its own software and the party in the best position to know the details of the System's functionalities and capabilities, *see id.*, at ¶¶ 9-10, 30;

- Plaintiff began to encounter problems with the System almost immediately and has never had a "go live" with the software due to the software's fundamental shortcomings, *id.*, at ¶¶ 22, 34-35;

- FUJI "knew that it had not provided [Plaintiff] with complete, accurate, and truthful information during the sales process, which [Plaintiff] needed to make an informed decision about purchasing the [System,]" *id.*, at ¶ 47;

- FUJI "was untruthful about the fact that the [System] lacked basic functionality for a multi-organizational, multi-provider radiology practice like [Plaintiff]," *id.*

However, the complaint lacks factual allegations about FUJI's knowledge or intent to support its conclusory allegations. Plaintiff fails to satisfy the requirement of a "compelling demonstration of egregious intentional misbehavior" to make its allegations plausible. *Net2Globe*, 273 F. Supp. 2d at 454. Plaintiff's allegations are akin to fraud, but lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

**B. Plaintiff Fails to Plausibly Plead That the Limitation of Damages and Disclaimer Provisions Are Unconscionable.**

Pursuant to N.Y. UCC § 2-719, parties to a commercial contract may agree to limit the seller's liability for damages. *See Gen. Elec. Co. v. Varig–S.A.*, No. 01 Civ. 11600RJHJCF, 2004 WL 253320, at *3–*4 (S.D.N.Y. Feb. 10, 2004). With respect to consequential and incidental damages in particular, a sales contract may exclude such damages as long as the exclusion is not unconscionable. *See* N.Y. UCC § 2–719(3); *see also McNally*

*Wellman*, 63 F.3d at 1198 n.8 (recognizing that, while the terms of U.C.C. § 2–719(3) refer only to consequential damages, the unconscionability standard also applies to limitations on incidental damages). The UCC's unconscionability provision, N.Y. UCC § 2–302, explicitly states that unconscionability is to be assessed "at the time" of the contract. *See* N.Y. UCC § 2–302(1).

Under New York law, "[a]n unconscionable contract is one that is so grossly unreasonable in the light of the mores and business practices of the time and place as to be unenforceable on its face." *Siemens Credit Corp. v. Am. Transit Ins. Co*., No. 00 CIV. 0880 (BSJ), 2001 WL 40775, at *2 (S.D.N.Y. Jan. 17, 2001) (citing *Gillman v. Chase Manhattan Bank, N.A*., 534 N.E.2d 824, 828 (N.Y. 1988)). "[The doctrine of unconscionability] has little applicability in a commercial setting, and is intended primarily to protect the 'commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company.'" *In re CBGB Holdings, LLC*, 439 B.R. 551, 560 (Bankr. S.D.N.Y. 2010) (quoting *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 396 (N.Y. 1976)).

The doctrine of unconscionability requires a showing "that the contract was both *procedurally* and *substantively* unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *McNally Wellman*, 63 F.3d at 1198 (quoting *Gillman*, 534 N.E.2d at 827) (emphasis added). Substantive unconscionability, "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Media Glow Digital*, 2018 WL 2175550, at *7 (quoting *Gillman*, 534 N.E.2d at 829). The determination of unconscionability is a question of law decided by this Court. *See McNally Wellman*, 63 F.3d at 1198. Plaintiff provides no basis for its argument that this commercial contract was unconscionable.

With respect to procedural unconscionability, "[t]he focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 CIV. 7907, 2018 WL 2175550, at *7 (S.D.N.Y. May 11, 2018) (quoting *Gillman*, 534 N.E.2d at 828). Plaintiff's only argument is that FUJI had superior knowledge about its product. Again, this is no basis for voiding a common term in a commercial contract. *See, e.g., In re BH Sutton Mezz LLC*, No. AP 16-01187, 2016 WL 8352445, at *12 (Bankr. S.D.N.Y. Dec. 1, 2016).

The express clauses of the EULA limit damages to those awarded for breach of contract, the definition of which is not involved in the motion. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, I strike Plaintiff's claim for consequential damages, incidental damages, and lost profits. This EULA and any breach thereof do not provide basis for punitive damages. *See Compl.*, Ex. A, at § 11; *see also Rosa v. TCC Commc'ns, Inc.*, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016). I dismiss, as well, Count III of the complaint, alleging breach of implied warranty of merchantability.

## II.     Fraudulent Inducement

To state a fraudulent inducement claim under New York law, a plaintiff must plead "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 246 (S.D.N.Y. 2011) (quoting *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72,

7

76 (2d Cir. 1986)).  Rule 9(b) requires allegations of "particularity" that give rise to a strong inference of fraudulent intent.  *Eaves*, 785 F. Supp. 2d at 246-47 (citing *Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC*, No. 08–9101, 2009 WL 5179535, at *11 (S.D.N.Y. Dec. 29, 2009) (applying Rule 9(b) to fraudulent inducement claim).

A fraudulent inducement claim contradicts the explicit terms of the EULA disclaiming four categories of warranties relating to the System.  *See Compl.*, at Ex. A, at § 10(a).  Courts in New York have dismissed fraud claims as a matter of law for the lack of reasonable reliance in light of similar disclaimers.  *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) (dismissing fraud claims for lack of reasonable reliance where agreement included disclaimer that "'Seller . . . makes [no] . . . representation or warranty' with respect to 'the business' being sold 'or otherwise,' or its 'probable success or profitability,' 'or with respect to any other information' provided to [plaintiff]").  Moreover, Plaintiff's labels and conclusory statements do not constitute allegations of "particularity" that give rise to a strong inference of fraudulent intent under the Rule 9(b) standard.  *See* Fed. R. Civ. P. 9(b).  Accordingly, Count IV of the complaint is dismissed.

### III.     Other Issues with Respect to FUJI.

#### A. State Law Consumer Protection.

Plaintiff asserts a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, the New York Consumer Protection from Deceptive Acts and Practices, and the New York False Advertising Act.

Plaintiff's claim for violation of the Floridian act are dismissed, because the EULA contains a broad choice-of-law provision selecting New York law as the governing law for "any claims arising under or relating in any way" to the agreement.  *See Compl.*, Ex. A.

As to Plaintiff's cause of action under the New York statutes, New York courts have held that an action thereunder will fail as a threshold matter unless the challenged transaction was "consumer-oriented."  *See, e.g., Exxonmobil Inter-America, Inc. v. Advanced Information Engineering Serv's, Inc*., 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 24–26 (1995)). These consumer-protection regimes, as set forth in the two New York statutes, do not apply to private contract disputes relating to business-to-business transactions between sophisticated parties, except in severely limited circumstances where the conduct at issue threatens to injure the public at large.  *See Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d. Cir. 2010). Here, all that Plaintiff alleges are some hypothetical, eventual impact on its patients that are tenuously related to FUJI's alleged misconduct during the sales process.  Because Plaintiff did not plausibly allege that the purchase of the System was "consumer-oriented," Plaintiff's consumer protection claims under the New York statutes are dismissed.

### B. Unjust Enrichment.

Plaintiff's unjust enrichment claim, which seeks the same relief as its breach of contract claim, is dismissed as duplicative.  *See Digizip.com, Inc. v. Verizon Servs. Corp*., 139 F. Supp. 3d 670, 683 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim when the parties did not dispute the validity of the contracts).

## IV.     Claim Against TIAA: Declaratory Judgment of Frustration of Purpose of the Lease.

Plaintiff seeks a declaratory judgment discharging its payment obligations to the financing company, TIAA, on the ground of frustration of purpose.  The financing agreement provides, and the parties agree, that New Jersey law controls.  *See Compl.*, Ex. E., at 2.

9

Under New Jersey law, relief from contractual obligations under the doctrine of frustration of purpose "will not be lightly granted." *JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc.*, 431 N.J. Super. 233, 248 (App. Div. 2013). The evidence presented by the party seeking to invoke the doctrine "must be clear, convincing and adequate." *A-Leet Leasing Corp. v. Kingshead Corp.*, 150 N.J. Super. 384, 397 (App. Div. 1977). Under New Jersey law, to assert a frustration claim, the purpose that is frustrated must have been a principal purpose of that party in making the contract. *See* Restatement (Second) of Contracts § 265 cmt. a.

Here, Plaintiff concedes that the purpose of the Lease "was to provide financing for FUJI's [System] under the terms of the EULA between FUJI and [Plaintiff]." While the System provided by FUJI may not have functioned as Plaintiff desired, the Lease and related financing has functioned as intended. *See* ECF No. 35, at 8. Specifically, TIAA has paid FUJI for the System in full and provided financing requested by Plaintiff. *See Compl.*, at ¶ 15. Plaintiff, in turn, has made quarterly lease payments to TIAA for more than three years. Therefore, Plaintiff has failed to demonstrate the principal purpose of its agreement with *TIAA* has been frustrated, and Plaintiff's claim for declaratory judgment against TIAA is therefore dismissed.

## CONCLUSION

For the foregoing reasons, the consequential damages, incidental damages, and lost profits claims of Counts I and II of the complaint are stricken. Counts III to VIII of the complaint are dismissed with prejudice. TIAA shall be dropped as a party defendant. Plaintiff shall file an amended complaint consistent with the Court's order by January 22, 2021. Defendant FUJI shall amend its answer by January 29, 2021. The parties shall appear for an Initial Case Management Conference on February 16, 2021, at 12:00 p.m.

The Clerk of Court is instructed to close the open motions (ECF Nos. 23, 28).

SO ORDERED.

Dated: January 15, 2021 _____/s/_____
New York, New York ALVIN K. HELLERSTEIN
United States District Judge